Laura V. KING, Petitioner,

v.

DEPARTMENT OF THE NAVY, Respondent.

No. 04–3089.

United States Court of Appeals, Federal Circuit.

Oct. 13, 2004.

Before LOURIE, BRYSON, and DYK, Circuit Judges.

## DECISION

PER CURIAM.

Laura V. King appeals from a decision of the Merit Systems Protection Board, Docket No. SE–0752–92–0328–C–2, denying her petition to enforce a settlement agreement with the Department of the Navy. We *affirm.*

## BACKGROUND

Ms. King was employed by the Navy as a Security Specialist until her removal in June 1992 for being absent without official leave ("AWOL"). Ms. King appealed her removal to the Board, and the parties eventually resolved that appeal through a settlement agreement. Ms. King agreed to withdraw her appeal, while the Navy agreed to cancel the removal action, to omit "all reference to the removal action from [Ms. King's] Official Personnel File," to accept Ms. King's voluntary resignation, and to pay Ms. King up to $1200 in attorney fees.

In August 1996, Ms. King petitioned the Board to enforce the settlement agreement after she discovered that personnel records of the Defense and Accounting Service ("DFAS") and the Office of Personnel Management ("OPM") included information about her removal. The Board denied the petition, but we reversed. *King v. Dep't of the Navy*, 130 F.3d 1031 (Fed.Cir. 1997). We explained that "[b]y correcting only those files in the hands of the Navy, and by retaining references in official government personnel files to the action that was subsequently revoked, Petitioner was denied the benefit of her agreement." *Id.* at 1033. On remand, the Board ruled that the Navy's breach of the settlement agreement was not material and did not entitle Ms. King to rescind the settlement agreement. We affirmed that decision. *King v. Dep't of the Navy*, 178 F.3d 1313 (Fed.Cir. 1999) (table).

In November 2000, Ms. King filed a claim with the Board seeking the right to be restored to her former position. Ms. King had previously filed a claim with the Office of Workers' Compensation Programs ("OWCP") requesting compensation for an injury that she alleged was the cause of the absence for which she was removed. Before the Board, Ms. King claimed that she had recovered from the injury and therefore was entitled to priority consideration for restoration either to the position that she had left or to an equivalent position. The Board ordered the Navy to give her priority consideration, and we affirmed. *King v. Dep't of the Navy*, 64 Fed.Appx. 204 (Fed.Cir. Apr.10, 2003) (nonprecedential).

After she left her position with the Department of the Navy, Ms. King became an administrative law judge with the Employment Security Department of the State of Washington. In 2003, while one of her appeals to this court was pending, Ms. King presided in the matter of Jerime M. Dehuff, in which Mr. Dehuff was suing the Department of the Navy for employment benefits. In April 2003, Ms. King ordered that Mr. Dehuff's claim be al-

lowed. Shortly thereafter, someone in the Navy realized that Ms. King had presided over the Dehuff case at the time she was pursuing her claim against the Navy. The Navy then petitioned for review of the Dehuff case, arguing that Ms. King should have recused herself in that matter. In its petition, the Navy explained that Ms. King was "a former employee of the U.S. Department of the Navy and was terminated because of her absence without leave status," which action was "later revised by settlement agreement to a resignation." The Navy explained that Ms. King's record of litigation against the Navy was "extensive"; the Navy attached the title pages of three of the opinions in the litigation and offered to provide the full litigation record upon request. Ms. King's employer then began an investigation of Ms. King and asked her to recuse herself from any other cases involving the Navy.

In June 2003, Ms. King filed with the Board a petition to enforce the settlement agreement, alleging that the Navy's disclosures in the Dehuff matter constituted a breach of the agreement. The Board concluded that the Navy did not breach the settlement agreement. In particular, the Board construed the agreement to extend only to Ms. King's official personnel records, and not to the Navy's litigation records. The Board explained that "it would not be reasonable to interpret a requirement for expungement of personnel records to be so expansive that an agency could not maintain material necessary to defend itself in litigation involving the appellant." Finding that Ms. King had failed to show that her official personnel records contained any reference to her removal, the Board determined that the Navy was in compliance with the agreement. The Board also concluded that the history of Ms. King's dispute with the Navy, including her removal, was relevant and material to the question whether she should have disqualified herself in the Dehuff matter. The Board further noted that Ms. King's removal was discussed in at least one published decision, *King v. Dep't of the Navy*, 130 F.3d 1031 (Fed.Cir.1997), and thus was part of the public record.

Ms. King appealed from the Board's decision.

## DISCUSSION

In our 1997 decision involving Ms. King, we construed the settlement agreement to extend to all official personnel records kept by the government, not just those in the hands of the Navy. *King*, 130 F.3d at 1034. In ascertaining the intended meaning of the settlement agreement between Ms. King and the Navy, we concluded:

It appears to be undisputed that the mutual intent was to purge the personnel records that are officially kept and thus might be available to a future employer; no other reasonable meaning has been proposed. The settlement agreement applies to official personnel files where those files exist. It is highly unlikely that the parties bargained for the purging of only local personnel records, while the main personnel files at the Office of Personnel Management, as well as official files at DFAS, retain the undesired information.

*Id.* at 1034. Thus, our 1997 decision appears to restrict the settlement agreement at issue here to officially kept personnel records. Following our decision in that case, we have had occasion to construe substantially similar language in another settlement agreement. *See Musick v. Dep't of Energy*, 339 F.3d 1365 (Fed.Cir. 2003) ("DOE agrees to remove all documentation relating to and culminating in Mr. Musick's removal ... from his Official Personnel File (OPF)."). In *Musick*, we decided that the language of the agree-

ment did not extend to all of the agency's files, but instead that "the agency only obligated itself to remove pertinent material from Mr. Musick's OPF." *Id.* at 1369. We explained that "most importantly, [the settlement agreement] identifies only one place from which the specified material is to be removed," and that "the paragraph is clear." *Id. Compare Rose v. Dep't of the Army,* 33 M.S.P.R. 430 (1987) (construing agreement stating, "It is the full intentions [sic] of the parties to this that all records of any such removal action or any detrimental information which may have been recorded by Respondent in its investigation be destroyed in full" to be broadly inclusive in scope). Thus, clear language of the settlement agreement at issue in this case binds the Navy to expunge references to Ms. King's removal only from her official personnel records, whether they are records of the Navy or of other parts of the government.

Ms. King asserts that the Navy's petition in the Dehuff matter constituted a disclosure of material in a personnel file. She argues that the Navy routinely sends personnel specialists rather than attorneys to handle state unemployment hearings, and accordingly filings in state unemployment hearings are personnel files. As the Board explained, however, "the petition which mentioned the appellant was merely a document in the litigation file involving Mr. Dehuff." The fact that the Navy employs personnel specialists rather than attorneys to handle such matters does not somehow convert the materials filed in the Dehuff litigation into a portion of the personnel file of Ms. King.

Moreover, Ms. King has not shown that the Board erred in ruling that the references to Ms. King's removal in the Navy's petition in the Dehuff matter were relevant and material to the question whether Ms. King should have recused herself. Ms. King argues that the Navy's petition was not relevant and material to the issue of bias because (1) the petition was procedurally deficient in that any claim of bias was brought too late, and (2) the petition was substantively deficient because it lacked sufficient admissible evidence of bias. Regardless of whether there were procedural or substantive reasons that the Navy was not likely to prevail on its recusal petition, the material submitted in the petition was at least arguably relevant to the issue of bias, which was the reason given by the Navy for submitting the material. Absent some indication that the recusal petition was a pretext for making a prohibited disclosure of material from Ms. King's personnel file, filing the petition cannot be regarded as a violation of the settlement agreement. The purpose of the settlement agreement "is to eliminate this information [relating to Ms. King's removal] as it may affect future employment with the government or elsewhere," *King v. Dep't of the Navy,* 130 F.3d 1031, 1033 (Fed.Cir.1997), not to render the information unusable for all purposes. Thus, the Navy was entitled to maintain information regarding Ms. King's removal for the purpose of defending itself in litigation, and to use that information if it became necessary to do so in the course of the litigation. *See, e.g., Baig v. Dep't of the Navy,* 66 M.S.P.R. 269 (1995) ("[T]he parties could not have intended to expunge an agency's appeal or litigation file, because to do so would leave the agency defenseless in the event of the appellant's breach of appellant's obligations under the agreement.).

Because Ms. King has not shown that the Navy breached the settlement agreement by filing the recusal petition in the Dehuff matter, she is not entitled to rescind the settlement agreement and rein-

state the appeal. Nor is she entitled to compensation or reinstatement with the Navy.

Ms. King's other arguments either lack merit or were not raised before the Board.

Accordingly, we affirm the Board's decision in this case.